IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY WEAKLEY, | ) | |
| | ) | |
| Plaintiff (*Pro Se*), | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-00101 |
| | ) | |
| CARGO NETWORK LEASING INC., | ) | |
| PUTNIK EXPRESS, and PERICA | ) | District Judge Reeves |
| MANOJLOCIC | ) | Magistrate Judge Corker |
| | ) | |
| Defendants. | ) | |

### DECLARATION OF MILJAN IVEZIC

I, Miljan Ivezic, hereby declare and state as follows:

1. I am over the age of 18 and am competent to provide the testimony set forth herein. I have personal knowledge of the matters stated herein.

2. I am the Safety and Loss Control Manager for Cargo Network Solutions Inc. ("Cargo Network"), a Defendant in the above-entitled lawsuit. I am making this declaration in support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, for Improper Venue, or, Alternatively, Motion to Transfer Venue.

3. I am familiar with Cargo Network's involvement with the Plaintiff, Timothy Weakley, and its business records relating thereto.

4. Cargo Network is an interstate motor carrier that transports cargo for its customers. Cargo Network is incorporated in Illinois with its principal place of business in Des Plaines, Cook County, Illinois. Its sole office and operations are in Des Plaines. Cargo Network has no offices, dispatch or maintenance centers, or other facilities in Tennessee, and it does not



have any employees or owner-operators who reside in Tennessee. Cargo Network does not own or rent any property in Tennessee.

5. Cargo Network does pick-up and deliver a limited number of shipments in Tennessee. In 2017, Cargo Network picked up 391 loads and delivered 366 loads in Tennessee, which, combined, represented approximately 2.1% of the total loads that Cargo Network hauled nationwide in 2017. Through December 6, 2018, Cargo Network has picked-up 221 loads and delivered 253 loads in Tennessee in 2018, which, combined, represents approximately 1.5% of the total loads that Cargo Network has transported nationwide during that period of time.

6. In April 2018, Plaintiff unilaterally contacted Cargo Network by telephone to inquire about purchasing a semi-tractor and applying to become an independent owner-operator for Cargo Network. Upon information and belief, Plaintiff resided in Florence, Alabama at the time he contacted Cargo Network. I spoke with Plaintiff on the telephone regarding his inquiry about applying to become an owner-operator for Cargo Network.

7. Regarding Plaintiff's inquiry about purchasing a semi-tractor, I referred Plaintiff to Global Cargo Leasing Inc. ("Global Leasing") and its President, Mr. Perica Manojlovic. Global Leasing is in the business of leasing semi-tractors and trailers to its customers.

8. Plaintiff then unilaterally traveled to Cargo Network's and Global Leasing's respective offices in Des Plaines, Illinois. It is my understanding that, on May 2, 2018, Plaintiff met with Mr. Manojlovic in Global Leasing's office in Des Plaines, and they agreed upon and entered into a lease-purchase agreement for a semi-tractor (the "Tractor"), and the Tractor was delivered to Plaintiff that same day.

9. Thereafter, on May 2 and 3, 2018, Plaintiff completed a written application in Cargo Network's office in Des Plaines to become an independent owner-operator for Cargo

Network using the Tractor that he had just obtained from Global Leasing under the lease-purchase agreement. On May 3, Cargo Network and Plaintiff entered into a "Lease Agreement Between Cargo Network Solutions Inc. and Independent Contractor" (the "Owner-Operator Agreement"), which was signed by both parties in Cargo Network's office in Des Plaines on that day. (A copy of the Owner-Operator Agreement is attached to Plaintiff's Complaint in the lawsuit as Exhibit B.) Under the Owner-Operator Agreement, Plaintiff would haul loads as an owner-operator using trailers owned by Cargo Network.

10. Over the next two (2) weeks, Plaintiff hauled loads for Cargo Network to and through several states. Upon information and belief, Plaintiff was living out of the Tractor during this period of time. Cargo Network made two separate payments of compensation (less scheduled deductions (*e.g.*, registration, trailer, escrow) and fuel costs) to Plaintiff via direct deposit for loads carried. In mid-May, however, less than three (3) weeks after entering into the Owner-Operator Agreement, Plaintiff suddenly stopped working as an owner-operator for Cargo Network and unilaterally drove the Tractor to his alleged home in Tennessee. Plaintiff dropped the trailer, which belonged to Cargo Network, at a transport facility without Cargo Network's knowledge or approval. Cargo Network subsequently sent a truck to retrieve the trailer and bring it back to Des Plaines, Illinois, at Cargo Network's expense. In addition, at some point, Plaintiff disconnected the GPS device on the Tractor, so that Cargo Network could not track its location. Plaintiff then filed this lawsuit against the Defendants in Tennessee.

11. Under the Owner-Operator Agreement, Plaintiff is obligated to reimburse Cargo Network for a number of advances and deductions (*e.g.*, registration, bobtail insurance, lost plates, an electronic logging device (ELD) belonging to Cargo Network) totaling over $2,500 to date, and over $1,600 in fuel that Plaintiff charged to the company in May 2018.

12. Any employees of Cargo Network that would testify as witnesses in this matter reside in Cook County, Illinois. All documents and business records relevant to the Owner-Operator Agreement and Plaintiff's two (2) weeks of work as an owner-operator for Cargo Network are located in Cargo Network's office in Des Plaines, Illinois.

I declare under penalty of perjury that the foregoing statements are true and correct, on this the 10th day of December, 2018.

_____
MILJAN IVEZIC